IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| WESLEY PERKINS | § | |
| --- | --- | --- |
| | § | |
| V. | § | NO. 1:17-CV-378-LY |
| | § | |
| WHITNEY BREWSTER, et al. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before this Court are Defendants' Motions to Dismiss (Dkt. Nos. 13 & 21), Plaintiff's Responses (Dkt. Nos. 20 &22), and Defendants' Replies (Dkt. No. 25 & 28). The District Court referred the motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. GENERAL BACKGROUND**

Wesley Perkins brings this suit against the Executive Director of the Texas Department of Motor Vehicles (DMV), the Tax Assessor Collector for Travis County, and the Director of Texas Department of Public Safety (DPS). In the Complaint, Wesley appears to argue that because he has "terminated the trusts" (i.e., the Certificate of Title issued to owners of vehicles) between himself and the DMV that there is no longer a "viable commercial nexus" by which he might be governed by the Texas Transportation Code. Defendants move to dismiss his claims.

**II. LEGAL STANDARD**

**A.    Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction, and may

only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

B.  **Rule 12(b)(6)**

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). Finally, although this Court construes the briefs of *pro se* litigants liberally, a *pro se* litigant must still comply with the court rules of procedural and substantive law. *Bird v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation marks and citations omitted), *cert. denied*, 537 U.S. 1200 (2003).

### III. ANALYSIS

Perkins has been arrested on a number of traffic related charges over the last five years. In each of these cases, Perkins argued that any violation of the Transportation Code has as an element, a requirement of "commercial consent," and therefore he is not subject to the laws. Dkt. No. 1 at 5. This is at the heart of his argument in this case. Perkins claims that he derives this requirement from *Lozman v. Riviera Beach*, 568 U.S. 115 (2013), in which the Supreme Court interpreted the word "transport" as it was used to define "vessel" in 1 U.S.C. § 3. There, the Supreme Court noted that transportation may be shown by the "conveyance (of things or persons) from one place to another." *Id.* at 121. Perkins reads this case to construe the Transportation Code to require "commercial consent to be regulated." Dkt. No. 1 at 6. He has previously brought this exact argument in each of his appeals of his convictions for violations of the Transportation Code. Here, he takes the argument a step further. Finding no relief in the Texas criminal appeals systems, Perkins has now "terminated the trusts" by which he argues was derived his "commercial consent."

3

Thus, from the starting point noted above, Perkins' logic has expanded—as best the Court can determine—as follows: the Certificate of Title issued to the purchaser of an automobile is evidence of commercial consent to be regulated because the financial institution—who owns the car before all payments are made—needs protection of its collateral, and this need for collateral is the basis of the laws governing roadways. The Certificate of Title, according to Perkins, then creates the consent that is needed in order for a person to be bound by the Transportation Code and subject to its requirements; whereas termination of the Certificate of Title (i.e., the uneconomic trust) is evidence of non-consent such that Perkins cannot be regulated by the Transportation Code.

Leaving aside how non-sensical this argument is, the Court's analysis need go no further than the very first assertion: that to be regulated under the Transportation Code, one must assert "commercial consent." Because this assertion is incorrect (as numerous courts have told Perkins), the remaining steps in his analysis cannot stand, as they are based on a false premise. To begin with, nowhere in *Lozman* are the words "commercial" or "consent" to be found, much less used as a phrase; nor is the phrase "for profit or hire," from which Perkins had construed the commercial consent element. Moreover, the court in *Lozman* was addressing the definition of "vessel" as it applies in admiralty, a completely different area of the law than the Transportation Code of Texas. Disregarding Perkins' reliance on *Lozman*, his argument has been rejected by a number of courts. First, the Texas Court of Appeals has rejected Perkins' use of this definition of "transportation" as a defense on no less than three occasions. *See Perkins v. State*, 2016 WL 691265 (Tex. App.—Austin Feb. 19, 2016) (rejecting the argument that a vehicle must be used for a commercial purpose to be regulated under the Transportation Code); *Perkins v. State*, 2016 WL 4272109 (Tex. App.—Austin Aug. 11, 2016, pet. denied) (same); *Perkins v. State*, 2015 WL 3941572 (Tex.

App.—Austin June 25, 2015) (same). Similarly, other courts have found no requirement of "commercial activity" in order to be bound by a state's motor vehicle laws. *See, e.g.*, *Snavely v. City of Huntsville*, 785 So.2d 1162 (Ala. Crim. App. 2000) (rejecting the defendant's argument that commercial activity was required to be subject to the state's transportation laws); *see also Leverson v. State*, 2016 WL 4628054 (Tex. App.—Austin Aug, 30, 2016) ("[A]pellant's interpretation of 'transportation' misapplies that term to the Transportation Code provisions at issue in these cases. In light of that misinterpretation and misapplication, we disagree that he was not required to comply with the applicable statutes.").

Instead, courts have held that "driving an automobile on public roads is not a constitutionally protected right, but a privilege." *Leverson*, 2016 WL 4628054, at *9. A state is necessarily permitted to reasonably regulate any who use public roads under the State's police powers. *Id.* Admittedly, Perkins' argument is slightly different than that of the plaintiffs in the cases cited by *Leverson*. In those cases, the plaintiffs were challenging various transportation statutes on the basis of a property right or the fundamental right to travel. *See Gillaspie v. Dept. of Public Safety*, 259 S.W.2d 177, 466 (Tex. 1953); *Al-Yahnai Fountain Hawkins v. State*, 2005 WL 2156981 (Tex. App.—Eastland Sept. 8, 2005). Here, Perkins is basing his entire argument on an alleged constitutional "right not to contract." In other words, he is asserting that he has a constitutional right to choose whether to be bound by the laws. However, it should go without saying that consent is not required for a person to be bound by the law. And even if consent were somehow required, a driver consents by the simple expedient of using a public road. No more is required; a person using the public roads is required to abide by the governing laws, just as any person that engages in activity governed by law is required to abide by those laws. As such, Perkins' argument that "terminating

5

the trusts" evidences non-consent to be bound by the Texas Transportation Code—even if it made sense—is baseless. Thus, Perkins' claims should be dismissed for failure to state a claim upon which relief may be granted.

## IV. RECOMMENDATIONS

In accordance with the foregoing discussion, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motions to Dismiss (Dkt. Nos. 13 & 21).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-1429 (5th Cir. 1996) (en banc).

SIGNED this 9th day of February, 2018.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE